UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ROBERT KORLAND,  CASE NO: 9:24cv80823

    Plaintiff,

    vs.

TRANS UNION, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC., and
EQUIFAX INFORMATION SERVICES, LLC.

    Defendants.
_____/

**PLAINTIFF'S COMPLAINT**
**JURY DEMAND**

1. Plaintiff, ROBERT KORLAND ("Plaintiff" or "Mr. Korland") brings this action against TRANS UNION, LLC ("Trans Union"), EXPERIAN INFORMATION SOLUTIONS, LLC ("Experian") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Palm Beach County, Florida.

**PARTIES**

4. Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Palm Beach County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Defendant, Transunion LLC ("Trans Union") is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of

Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

6. Defendant, Experian Information Solutions, Inc. ("Experian") is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

7. Defendant, Equifax Information Services, LLC ("Equifax") is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

8. Trans Union, Experian, and Equifax shall collectively be referred to as Credit Reporting Agencies ("the CRAs.")

**FACTUAL ALLEGATIONS**

9. Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:
>
> i. credit or insurance to be used primarily for personal, family, or household purposes;
>
> ii. employment purposes; or
>
> iii. any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

10. The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

11. The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRA may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

12. To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian (the three major "National CRAs"), along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

13. The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/ (last accessed April 2, 2022).

14. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. *Id.*

15. The National CRAs, provide notice of a consumer's dispute to data furnishers in the ACDV format, and forward the ACDV to the furnisher through e-OSCAR.

16. If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

17. The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See https://www.e-oscar.org/getting-started/about-us (last accessed April 2, 2022).

18. Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

19. Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and states that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See, https://www.transunion.com/data-reporting/support-teams (last accessed April 2, 2022).

20. In November of 2021, Mr. Korland purchased blinds to be installed in his home through a Lowe's Home Improvement Store in Lake Park, FL ("the Merchant"), which he financed through his PNC credit card.

21. However, numerous failed installation attempts and defective blinds being delivered to his home, Mr. Korland never received the products he paid for which PNC is now holding him responsible for and reporting an inflated balance of approximately $2,754.16.

22. Mr. Korland attempted to resolve this dispute with the Merchant for nearly two years because he kept receiving blinds that were either broken, defective, and unable to be installed.

23. The factual basis of Mr. Korland's disputes to the CRAs are that he never received the items he purchased, but was still charged for them.

24. Normally, a consumer has an opportunity to dispute such charges on a billing statement, but PNC never gave Mr. Korland that opportunity because PNC failed to show the charges on subsequent billing statements after they denied his dispute on June 23, 2023.

25. Since PNC failed to send the required billing statement, Mr. Korland disputed the reporting to the CRAs in two written disputes dated August 14, 2023 and April 30, 2024, however all CRAs have merely parroted the information supplied by PNC and verified the balance incorrectly.

26. Mr. Korland tried to have the information corrected by sending a written dispute to the CRAs on or about August 14, 2023 (hereinafter "Initial Disputes"). A true and correct copy of the Initial Disputes to the CRAs are attached hereto as part of Composite Exhibit "A."

27. The Initial Disputes attached Mr. Korland's direct disputes to PNC, the timeline of failed and/or defective deliveries, PNC's ultimate denial of his dispute. *See Id.*

28. Based on an updated consumer reports from the CRAs, all Defendants continued to report the inflated balance after receiving the Initial Dispute.

29. Plaintiff's Trans Union disclosure dated May 14, 2014 does not state any dispute was previously investigated. However, the Initial Dispute was delivered on or about December 13, 2023 to Trans Union based on return receipts from the United States Postal Service.

30. Mr. Korland's Experian disclosure dated May 14, 2024, which stated in the "Reinvestigation Info" section "[t]his item was updated from the processing of your dispute in September 2023." Therefore, it appears an ACDV was sent from Experian to PNC for the Initial Dispute.

31. Plaintiff's Equifax disclosure dated May 24, 2024 shows "Equifax Info Svcs." Listed in the Soft Inquiries section with a "Description" stating "Automated Consumer Interview System" (ACIS) between August 30, 2023 and September 13, 2023. Plaintiff's Dispute to Equifax was delivered on August 29, 2023, therefore it appears the Initial Dispute was investigated.

32. Upon receiving the Initial Disputes, the CRAs relayed that correspondence to PNC, who failed to conduct a reasonable investigation, and then furnished inaccurate information to the CRAs.

33. As a result, Mr. Korland decided to write a second dispute letter on or about May 15, 2024, to the CRAs (hereinafter "Second Dispute.")  A true and correct copy of the second dispute is attached as part of Composite Exhibit "B."

34. The Second Dispute mirrored the Initial Dispute but added billing statements showing PNC failed to give Mr. Korland an opportunity to dispute the charge as a billing error.

35. Card issuers like PNC are required to send monthly billing statements to cardholders such as Mr. Korland.

36. Even after receiving the Second Dispute, with details describing why the reporting was inaccurate, Trans Union relayed that correspondence to PNC, who failed conduct a reasonable investigation and once again furnished inaccurate information back to Trans Union. There were no reinvestigation results sent by Trans Union, so Plaintiff obtained a copy of his updated report and saw the balance to PNC was still inaccurate and inflated.

37. Even after receiving the Second Dispute, with details describing why the reporting was inaccurate, Experian relayed that correspondence to PNC, who failed conduct a reasonable investigation and once again furnished inaccurate information back to Experian. A true and correct copy of the reinvestigation results sent by Experian is attached as part of Composite Exhibit "C."

38. Even after receiving the Second Dispute, with details describing why the reporting was inaccurate, Equifax relayed that correspondence to PNC, who failed conduct a reasonable investigation and once again furnished inaccurate information back to Equifax. There were no reinvestigation results sent by Equifax, so Plaintiff obtained a copy of his updated report and saw the balance to PNC was still inaccurate and inflated.

39. The CRAs reliance on PNC has caused the Inaccurate Information to be sent to remain on Plaintiff's credit reports when evaluating Plaintiff's credit worthiness.

40. The dates when the Inaccurate Information was viewed are reflected as "Regular Inquiries" or "Hard Inquiries" on Plaintiff's consumer disclosures following the Initial and Second Dispute.

41. One or more of the enumerated "Regular Inquiries" and/or "Hard Inquiries" have resulted in damages to Plaintiff in multiple forms, including economic and non-economic harm.

42. Unless and until the Inaccurate Information is no longer a factor in Plaintiff being denied credit, being granted credit at increased rates, losing the opportunity to benefit from credit, or Plaintiff being forced to procure a co-signer to be granted any credit under any terms, these economic losses will continue.

### COUNT I - VIOLATIONS OF 15 U.S.C. §1681i
### (AGAINST TRANS UNION FOR INITIAL AND SECOND DISPUTE)

43. Plaintiff incorporates by reference the allegations in Paragraphs 1 -5, 8 – 29, 32 – 36, and 39 – 42.

44. At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

45. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

46. During the relevant time frame, Trans Union received Plaintiff's Initial Dispute and Second Dispute regarding the accuracy or completeness of the PNC account appearing on Plaintiff's consumer disclosure.

47. Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete

inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

48. Additionally, Trans Union unreasonably relied on information provided by PNC, when readily verifiable information that Plaintiff provided in the Initial Dispute and Second Dispute placed Trans Union on notice that PNC's information was inaccurate and unreliable.

49. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

50. Alternatively, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

51. As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with the Inaccurate Information being sent to third parties, damage to her reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress of being denied credit or being granted credit at increased rates, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT II - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST TRANS UNION

52. Plaintiff incorporates by reference the allegations in Paragraphs 1 – 5, 8 – 29, 32 – 36, and 39 – 42 as if fully set forth herein.

53. At all times relevant hereto, TransUnion is and was a "consumer reporting agency" as provided for under the FCRA.

54. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

55. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

56. Any users of credit reports that viewed the PNC account saw the Inaccurate Information.

57. Even after Plaintiff's Initial Dispute and Second Dispute, the PNC account is still being reported with the Inaccurate Information.

58. Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

59. In the alternative, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

60. As a result of Trans Union's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress of being denied credit or being granted credit at increased rates, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the

Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT III – VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EXPERIAN FOR INITIAL DISPUTE AND SECOND DISPUTE

61. Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 6, 8 – 28, 30, 32 – 35, 37, and 39 – 42.

62. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

63. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

64. During the relevant time frame, Experian received Plaintiff's Initial Dispute and regarding the accuracy of the account reported by PNC on Plaintiff's credit report.

65. Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

66. Experian failed to provide any reinvestigation results following Plaintiff's Initial Dispute and Plaintiff's follow-up letter requesting same..

67. Additionally, Experian unreasonably relied on information provided by PNC and/or Home Credit, when readily verifiable information that Plaintiff provided in her dispute(s) placed Experian on notice that PNC and Home Credit's information was inaccurate.

68. Even after Plaintiff's written dispute and follow-up, the PNC account is still being reported with the Inaccurate Information.

69. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

70. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

71. As a result of Experian's violations of the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT IV– VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EXPERIAN

72. Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 6, 8 – 28, 30, 32 – 35, 37, and 39 – 42.

73. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

74. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

75. During the relevant time frame, Experian received Plaintiff's Initial Dispute and follow-up correspondence regarding the accuracy of the account reported by PNC and/or Home Credit on Plaintiff's credit report.

76. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

77. Any users of credit reports that viewed the PNC account saw the Inaccurate Information.

78. Even after Plaintiff's written disputes, the PNC account is still being reported with the Inaccurate Information.

79. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

80. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

81. As a result of Experian's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT V – VIOLATIONS OF 15 U.S.C. §1681i
### AGAINST EQUIFAX FOR FIRST DISPUTE AND SECOND DISPUTE

82. Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 6, 8 – 28, 30, 32 – 35, 37, and 39 – 42 as if fully set forth herein.

83. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

84.	At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

85.	During the relevant time frame, Equifax received Plaintiff's Initial Dispute regarding the accuracy of the account reported by PNC and/or Home Credit on Plaintiff's credit report.

86.	Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

87.	Additionally, Equifax unreasonably relied on information provided by PNC, when readily verifiable information that Plaintiff provided in her disputes placed Equifax on notice that PNC and Home Credit's information was inaccurate.

88.	Even after Plaintiff's written dispute(s) the PNC account is still being reported with the Inaccurate Information.

89.	Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

90.	In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

91.	As a result of Equifax's violations of the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## **COUNT VI – VIOLATIONS OF 15 U.S.C. §1681e(b)**
## **AGAINST EQUIFAX**

92. Plaintiff incorporates by reference her allegations in paragraphs 1 – 4, 6, 8 – 28, 30, 32 – 35, 37, and 39 – 42.

93. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

94. At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

95. During the relevant time frame, Equifax received Plaintiff's Initial Dispute regarding the accuracy of the account reported by PNC and/or Home Credit on Plaintiff's credit report.

96. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

97. Any users of credit reports that viewed the PNC account saw the Inaccurate Information.

98. Even after Plaintiff's written dispute(s), the PNC account is still being reported with the Inaccurate Information.

99. Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

100. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

101. As a result of Equifax's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the

loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and Such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

102.   Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**DEBT SHIELD LAW**
***/s/ Kevin Rajabalee, Esq.***
Fla. Bar. No. 119948
3440 Hollywood Blvd., Suite 415
Hollywood, FL 33021
Main: 754-800-5299
Direct: 954-667-3096
Fax: 305-503-9457
kevin@debtshieldlaw,com
dayami@debtshieldlaw.com
service@debtshieldlaw.com
*Attorney for Plaintiff*